## WILLIS & *al. versus* HOBSON.

One cannot make another his debtor, by paying his promissory note, without request express or implied.

An express man received the money to pay a note belonging to one of the banks in Boston, which money he otherwise disposed of; on the last day of grace, he called on the plaintiffs and requested them to pay the note for him, as he was short of funds, which was assented to, but from the lateness of the request, the payment could not be made that day; to protect the teller for delay of payment, the firm name of the express company, and the name of the plaintiffs were indorsed upon the note, and the next day it was paid by plaintiffs; — *Held*, that the plaintiffs could maintain no action upon the note against the maker.

On REPORT from *Nisi Prius*, WELLS, J., presiding.

ASSUMPSIT, against defendant, as maker of a promissory note, payable to the order of John Dow & Co., at the Grocer's Bank, Boston. On the back of the note was indorsed "John Dow & Co., waiving demand and notice," and underneath this indorsement the names of "Longley & Co."

The signatures were admitted to be genuine, and the note was read to the jury.

The defendant showed, by John Dow, that a few days before the note became due, he gave to Benjamin Longley, of Longley & Co's express, the money to pay the note in suit, with a memorandum where it might be found, and that he was never notified as indorser of the non-payment of the note.

It also appeared, by another witness, that soon after this note was paid at the bank, one of the plaintiffs said " we have paid a note for him," (meaning Benj. Longley,) or "had taken up a note for him."

It also appeared by the deposition of Benjamin Longley, objected to by plaintiffs, that he took the money of Dow to pay this note, and used it for other purposes, that on the last day of grace, just before the banks closed in Boston, he called on Willis, one of the plaintiffs, and told him he had a note to pay for John Dow, and wanted him to pay this note for him, as he was short of funds; that he agreed so to do, whereupon he notified the bank teller, who went to

plaintiff's office with him to receive the pay; that when they went in, the teller presented the note, and Willis said, "my check book is locked up in my safe now," or, "I cannot stop to get at my check book now," or words to that effect, and also said, "here, Longley, put your name on it," which was done; and Willis then put on the firm name of "Willis & Co." Willis then gave the note to the teller, saying, "call to-morrow, and I will give you a check for the note, it will be just as well."

It appeared also by his testimony, that he was, and had been for a long time, engaged in the express business, and it was a part of his business to receive money from persons in Portland to pay notes due from said persons in Boston, and that from numerous business transactions with the plaintiffs, they well knew the business in which he was engaged.

The deposition of the teller was also put in, when the cause was withdrawn from the jury and submitted to the full Court, to enter such judgment as the law and facts, elicited by the legal testimony in the case, should require.

*Rand,* or the defendant.

1. Longley is a competent witness whether regarded as an indorser or not. If an indorser, he stands indifferent. The indorsee is competent to prove subsequent facts. 2 Greenl. Ev. 169, § 207; 1 Greenl. Ev. 469, § 399; *Buck* v. *Appleton,* 14 Maine, 284.

2. But Longley, upon the testimony, does not occupy the position of an indorser.

3. The plaintiffs cannot claim as indorsers, the circumstances under which they put their name on the paper, and afterward received it, negative that position. They did not pay the note as parties, but as third persons, it was paid for B. Longley, at his request, and on his account and for no other person.

4. By the general commercial law, the doctrines and principles of payments for the honor of a party to commercial paper, does not apply to promissory notes, (only to

bills,) and here there was no protest, and by the general commercial law, to constitute a payment for the honor of a party, such payment must be made after the protest of the paper. Story on Prom. Notes, 556, § 453.

*Willis & Fessenden,* for the plaintiffs, claimed the right to sustain the action on two grounds. —

1. That they paid the note on the credit and for the honor of the maker.

2. On the ground that they were purchasers in the market.

3. The testimony of Longley was not admissible.

SHEPLEY, C. J. — The firm name of the plaintiffs and the firm name of Longley & Co., are proved to have been indorsed upon the note on the last day of grace, a few minutes before the banks in Boston were closed for that day. They appear to have been so indorsed, not because they were or had been holders of the note, to give it currency, but for the purpose of rendering themselves liable to pay the note to the bank, and to prevent its being protested for non-payment. It was on the following day paid by the plaintiffs to the bank, and delivered to them. It does not appear to have been transferred to them by the bank, but merely delivered to them by the receiving teller on payment, without any communication with the other officers of the bank. The teller would have had no authority to transfer or convey any property in the note from the bank to the plaintiffs. They could have thus acquired no property in it, but by being regular parties to the paper. They did not become indorsers in the usual course of business, or by the request of the maker, or any regular indorser; and they paid it without any request from any such party. When a person, not being a regular party to a note, pays it for the honor or credit of the maker, or any indorser, without request, he does not thereby acquire a right to repayment from any of the prior parties, for whose honor he may have paid it. Story on Notes, § 453. He can no more make another his debtor by the payment of a note without re-

quest, express or implied, than he could by the payment of any ordinary account.

The note in this case appears to have been paid to the bank, not only without any request or knowledge of the defendant, but, according to the testimony of Benjamin Longley, at his request, and upon the credit of the firm of Longley & Co.

When the plaintiffs agreed with him to pay it, the teller, as he states, was not present. There is no difference between his testimony and that of the teller in this respect; while there is some difference respecting what took place afterwards, when they both went to the plaintiffs' office, to have the note there paid. But there is nothing in either of their statements respecting that transaction, inconsistent with the testimony of Longley, that plaintiffs had before agreed to pay it on the credit of his firm. The impression, or understanding of the teller, being but an inference or opinion of his own, can have no weight.

The arrangement, by which the note became indorsed by the plaintiffs, appears to have been only a substitute for payment, to induce the teller on his own responsibility, and at his own personal risk, to wait for payment until the next day, because the plaintiffs' account book with the bank, was not of convenient access.

By a payment under such circumstances, the plaintiffs did not acquire any title to, or interest in the note.

*Plaintiffs nonsuit.*

HOWARD, RICE, HATHAWAY and CUTTING, J. J., concurred.